# IN THE SUPREME COURT OF IOWA

No. 14–0495

Filed May 15, 2015

Amended July 21, 2015

**CITY OF IOWA CITY, IOWA,**

　　Appellant,

vs.

**IOWA CITY BOARD OF REVIEW,**

　　Appellee,

and **PRESTIGE PROPERTIES**,

　　Intervenor.

_____

**CITY OF IOWA CITY, IOWA,**

　　Appellant,

vs.

**IOWA CITY BOARD OF REVIEW,**

　　Appellee,

and **MYRTLE GROVE HOUSING, INC.,**

　　Intervenor.

_____

　　Appeal from the Iowa District Court for Johnson County, Paul D. Miller, Judge.

　　A city appeals a decision of the district court affirming a board of review's decision to classify the property owned by eleven multiple housing cooperatives as residential properties for purposes of property taxes.　**AFFIRMED.**

Eric R. Goers, Assistant City Attorney, Iowa City, for appellant.

Charles T. Traw of Leff Law Firm, LLP, Iowa City, for appellee.

Kirsten H. Frey and Michael W. Kennedy of Kennedy, Cruise, Frey & Gelner, LLP, Iowa City, for intervenors.

**WIGGINS, Justice.**

A city's board of review reclassified eighteen properties held by eleven multiple housing cooperatives from commercial to residential for property tax purposes. The city appealed the board's decision to the district court. The district court affirmed the board's decision on summary judgment. On appeal, we find that two Iowa corporations may organize a multiple housing cooperative under Iowa Code chapter 499A (2011).[1] We also find the Code does not require a one-apartment-unit-per-member ownership ratio for a multiple housing cooperative to be properly organized. Accordingly, these multiple housing cooperatives meet the organizational test we announced in *Krupp Place 1 Co-op, Inc. v. Board of Review*, 801 N.W.2d 9, 16 (Iowa 2011). Therefore, we affirm the judgment of the district court that affirmed the decision of the board classifying the cooperatives as residential for property tax purposes.

## I. Background Facts and Proceedings.

The Iowa Code permits the classification of residential property to include all land and buildings of multiple housing cooperatives organized under chapter 499A. Iowa Code § 441.21(11). On May 25, 2012, the Iowa City Board of Review sent notices to eighteen properties indicating the Board changed the classification for these properties from commercial to residential for property tax purposes. The properties were reclassified pursuant to Iowa Code section 441.21(11) because they had been recently organized as multiple housing cooperatives. The parties agree that two Iowa corporations organized each of the multiple housing cooperatives for the purpose of owning residential property in a

---

[1]All subsequent references to the Iowa Code are to the 2011 Code unless otherwise indicated.

cooperative. The corporations who organized the cooperatives are still involved in the ownership of the cooperatives.

On June 19, the City of Iowa City filed a notice of appeal with the district court, objecting to the Board's reclassification. The City argued the Board's reclassification of the properties as residential was improper because two natural persons, not two corporations, must organize multiple housing cooperatives under the Code. They also argued the Code requires a one-apartment-unit-per-member ownership ratio for a multiple housing cooperative to be properly organized. The district court allowed the multiple housing cooperatives to intervene in the action.

The Board filed a motion for summary judgment. The Board argued as a matter of law two corporations can organize a multiple housing cooperative because section 499A.1(1), which dictates the requirements for organizing a cooperative, defines a corporation as a person for purposes of chapter 499A. Iowa Code § 499A.1(1).

The City filed a response and its own motion for summary judgment. The City argued as a matter of law at least two of the organizers were required to be natural persons for the cooperative to be properly organized. Additionally, the City argued the organizers did not properly organize the cooperatives because each cooperative has more apartment units than members and Iowa Code section 499A.11 requires a one-to-one ratio.

The intervenors filed a resistance and their own motion for summary judgment. The intervenors argued as a matter of law chapter 499A specifically permits two corporations to come together to form a cooperative, not just natural persons. The intervenors also argued chapter 499A does not limit membership to one member per apartment unit.

The district court granted summary judgment in favor of the Board and the intervenors. The district court held section 499A.1(1) defines persons to include corporations, and therefore, the general assembly intended corporations to be able to act as organizers of a multiple housing cooperative. The district court further concluded nothing in section 499A.11 was relevant to the determination of whether the cooperative was properly organized. The City appeals.

**II. Issues.**

The first issue in this case is whether the Board correctly classified the cooperatives as residential properties when two Iowa corporations organized the cooperatives under chapter 499A. The second issue is whether the Code requires a one-apartment-unit-per-member ownership ratio for a multiple housing cooperative to be properly organized.

**III. Scope of Review.**

Ordinarily, if an appeal is from a decision of the local board of review, the district court hears the appeal in equity. Iowa Code § 441.39. However, because the district court adjudicated the issue on appeal by summary judgment, our review is for correction of errors at law. *Am. Legion, Hanford Post 5 v. Cedar Rapids Bd. of Review,* 646 N.W.2d 433, 437 (Iowa 2002). Summary judgment is proper if there is no genuine issue as to any material fact in dispute and the moving party is entitled to a judgment as a matter of law. Iowa R. Civ. P. 1.981(3).[2]

**IV. The Organizational Test.**

Our most recent case interpreting chapter 499A is *Krupp,* wherein we held the proper test for determining if a property could be classified

---

[2]Here, the standard of review elaborates upon, but is consistent with *Krupp. See* 801 N.W.2d at 13. In *Krupp,* we interpreted the statute and applied the standard of review for correction of errors at law. *Id.* at 13, 14–16. As stated here, this standard generally applies in reviewing rulings on motions for summary judgment.

as residential pursuant to Iowa Code section 441.21(11), is whether the multiple housing cooperative was properly organized, not the actual use of the property. *See* 801 N.W.2d at 16 ("We therefore conclude section 441.21(11) requires property owned by residential cooperatives, properly organized under chapter 499A, to be classified as residential and taxed at residential property rates."). Thus, our task is to determine whether the issues the City raised on appeal lead to the conclusion that the multiple housing cooperatives were not properly organized.

**V. Whether the Board Correctly Classified the Cooperatives as Residential Properties When Two Iowa Corporations Organized the Cooperatives Under Chapter 499A.**

Organization of a multiple housing cooperative is set forth in Iowa Code section 499A.1(1). In relevant part, it provides:

> Any two or more persons of full age, a majority of whom are citizens of the state, may organize themselves for the following or similar purposes: Ownership of residential, business property on a cooperative basis. *A corporation is a person within the meaning of this chapter.*

Iowa Code § 499A.1(1) (emphasis added).

The City claims this section requires the organizers of a multiple housing cooperative to have at least two natural persons. Under its interpretation of section 499A.1(1), in order for a corporation to be an organizer of a multiple housing cooperative, it must join at least two natural persons as an additional organizer. The Board and the intervenors take the position that two corporations can organize a multiple housing cooperative without natural persons.

To determine the answer to this issue, we must construe section 499A.1(1). When confronted with the task of statutory construction, we try to determine legislative intent from the words used by the general assembly, not from what the general assembly should or might have

said. *Auen v. Alcoholic Beverages Div.,* 679 N.W.2d 586, 590 (Iowa 2004). We "may not extend, enlarge or otherwise change the meaning of a statute" under the guise of construction. *Id.* When construing a statute, we are required to assess a "statute in its entirety, not just isolated words or phrases." *Schadendorf v. Snap–On Tools Corp.,* 757 N.W.2d 330, 337 (Iowa 2008). When construing a statute, we avoid a construction that makes part of a statute redundant or irrelevant. *Id.* We try to give a statute a reasonable construction "that best achieves the statute's purpose and avoids absurd results." *Id.* at 338.

At first glance, it appears the phrases "persons of full age, a majority of whom are citizens of the state" and "[a] corporation is a person within the meaning of this chapter" are inconsistent with each other. Iowa Code § 499A.1(1). After all, how could a corporation be of full age? Nevertheless, we must determine whether the two phrases are actually inconsistent with each other.

When the general assembly first enacted section 499A.1(1), it contained the same phrases that are the subject of this litigation. *Compare* 1947 Iowa Acts ch. 250, § 1 (codified at Iowa Code § 499A.1 (1950)), *with* Iowa Code § 499A.1(1). A search of the 1946 Code shows the general assembly used language similar to section 499A.1(1) in other sections of the Code. *See, e.g.,* Iowa Code § 504.1 (1946) (requiring incorporators of nonprofit corporations to be "persons of full age, a majority of whom shall be citizens of the state"), *repealed by* 1990 Iowa Acts ch. 1164, § 27.

The use of the phrase "persons of full age" denotes that the person performing the organizing has reached the age of majority and is capable of executing a contract. *See Martin v. Stewart Motor Sales*, 247 Iowa 204, 207–08, 73 N.W.2d 1, 3–4 (1955) (holding an individual not of full age

who misrepresents his or her age cannot invoke the defense of infancy to void a contract); *cf. Black's Law Dictionary* 78 (3d ed. 1933) ("In the old books, 'age' is commonly used to signify 'full age;' that is, the age of twenty-one years."); *Black's Law Dictionary* at 827 (defining "full age" as "the age of legal majority"). Even before 1947, when the general assembly enacted section 499A.1(1), duly organized corporations had the authority to "make contracts, acquire and transfer property,—possessing the same powers in such respects as natural persons." Iowa Code § 491.3(6) (1946) (amended 1970, 1983, 1990, 2002); *see also* 1947 Iowa Acts ch. 250, § 1.

The phrase "whom are citizens of the state" denotes a person who has his or her home and domicile in the state, with the intention of remaining in the state, and who has no home, domicile, or right of citizenship in another state. *Cf. Fuller v. McDonnell*, 75 Iowa 220, 221, 39 N.W. 277, 278 (1888) (defining " 'citizen of the county' " as having "his present home and domicile in any county, although it may be for a temporary purpose, provided he has a fixed intention of remaining there for an indefinite period of time, and has no home, domicile, or right of citizenship elsewhere"). Further, the Code predating the enactment of section 499A.1(1) acknowledged both domestic corporations and foreign corporations. *Compare* Iowa Code ch. 491 (1946) (regulating Iowa corporations), *with id.* ch. 494 (regulating foreign corporations).

We believe the legislative intent with the enactment of chapter 499A was to allow two corporations to organize a multiple housing cooperative. We also believe the intent of the general assembly at the time it enacted section 499A.1 was to put the same restrictions on corporate organizers as it did on persons who organized multiple housing cooperatives—the corporate organizers must have the authority to

organize a multiple housing cooperative and a majority of the corporate organizers must be Iowa corporations.

Had the general assembly intended to adopt the City's position—a corporation cannot organize a multiple housing cooperative without having two natural persons—the statute would have read differently. The general assembly would have said a corporation could organize a multiple housing cooperative only with two or more natural persons. Rather, the general assembly equated a corporation to a person by the language used. *See id.* § 499A.1(1) (1950). Thus, we find the City's arguments unconvincing as to the general assembly's intent.

The City makes no claim that the organizers of these multiple housing cooperatives were not duly organized Iowa corporations with the legal capacity to enter into a contract to organize a multiple housing cooperative. Consequently, the district court was correct in finding as a matter of law that the Board was correct in holding two corporations can organize a multiple housing cooperative.

**VI.    Whether the Code Requires a One-Apartment-Unit-Per-Member Ownership Ratio for a Multiple Housing Cooperative to Be Properly Organized.**

Iowa Code section 499A.1(1) sets forth the legal requirements established by the general assembly to organize a multiple housing cooperative. The organizers are required to

> adopt, and sign and acknowledge the articles of incorporation, stating the name by which the cooperative shall be known, the location of its principal place of business, its business or objects, the number of directors to conduct the cooperative's business or objects, the names of the directors for the first year, the time of the cooperative's annual meeting, the time of the annual meeting of its directors, and the manner in which the articles may be amended.

*Id.* § 499A.1(1).

Once the articles are adopted, signed, and acknowledged,

> [t]he articles of incorporation shall be filed with the secretary of state who shall, if the secretary approves the articles, endorse the secretary of state's approval on the articles, record the articles, and forward the articles to the county recorder of the county where the principal place of business is to be located, and there the articles shall be recorded, and upon recording be returned to the cooperative. The articles shall not be filed by the secretary of state until a filing fee of five dollars together with a recording fee of fifty cents per page is paid . . . .

*Id.*

The general assembly did not require the organizers of a multiple housing cooperative to be members of the cooperative or own any property at the time of organization. *See id.* The general assembly recognized that a properly organized multiple housing cooperative had the power to build, purchase, receive by gift, or lease apartments. *Id.* § 499A.2(3)–(4). Thus, to be properly organized it is not necessary for a one-apartment-unit-per-member ownership ratio.

The City argues section 499A.11 requires a one-apartment-unit-per-member ownership ratio to be properly organized. Section 499A.11 provides:

> The cooperative has the right to purchase real estate for the purpose of erecting, owning, and operating apartment houses or apartment buildings. The interest of each individual member in the cooperative shall be evidenced by the issuance of a certificate of membership. The certificate of membership is coupled with a possessory interest in the real and personal property of the cooperative, entitling each member to a proprietary lease with the cooperative under which each member has an exclusive possessory interest in *an apartment unit* and a possessory interest in common with all other members in that portion of the cooperative's real and personal property not constituting apartment units, and which creates a legal relationship of landlord and tenant between the cooperative and member. The certificate of membership shall be executed by the president of the cooperative and attested by its secretary in the name and in the behalf of the cooperative.

*Id.* § 499A.11 (emphasis added).

First, section 499A.11 is not an organizational statute. Under chapter 499A, once the articles of incorporation are filed with the secretary of state by persons who satisfy the organizer requirements of Iowa Code section 499A.1, the cooperative becomes a body corporate and is then empowered with all of the powers enunciated in Iowa Code sections 499A.2(1)–(10). Accordingly, at least for purposes of meeting the organizational test for a cooperative, section 499A.11 is irrelevant.

Additionally, we do not read section 499A.11 to impose the requirement of one-apartment-unit-per-member ownership ratio, as asserted by the City. Rather, Iowa Code section 499A.11 only requires a coupling of ownership and membership interests. Put another way, while section 499A.11 certainly requires that each apartment be linked with a corresponding membership interest, there is nothing in section 499A.11 prohibiting one person from holding ownership and corresponding membership interest in more than one apartment unit. Further, this construction comports with the statute as read in its entirety and the process of forming multiple housing cooperatives as contemplated by chapter 499A.

Under chapter 499A, a multiple housing cooperative may acquire and change its bylaws before the housing cooperative ascertains all of its members. *See id.* § 499A.2(4) (permitting the board to "purchase, take, receive, lease as lessee . . . and otherwise deal in and with any real or personal property" upon filing the articles of organization). Additionally, a multiple housing cooperative may acquire and change its bylaws before it issues membership certificates. *Id.* § 499A.2A ("Prior to the admission of members to the cooperative, the power to alter, amend, or repeal the bylaws or adopt new bylaws is vested in the board of directors.").

In larger housing cooperatives, the process of preparing apartment units for habitation, ascertaining members, leasing or selling units, and issuing membership certificates may take significant time and proceed on a rolling basis. During this period, the concentration of leasehold, ownership, and membership interests in one individual may be necessary to facilitate development and ascertain future members. Nothing in chapter 499A precludes a cooperative from obtaining advantageous tax treatment during this interim period or suggests a cooperative is not properly organized until all the units have been leased or sold to different members.

The City also argues the 1991 amendments to chapter 499A indicate legislative intent to prevent members from owning more than one apartment. Prior to the amendments, chapter 499A included a provision that stated in relevant part,

> If one member owns more than one apartment that member may nevertheless have but one vote at such election. If any apartment or room is owned by more than one member they may, nevertheless, have but one vote at such election.

Iowa Code § 499A.19 (1991). At that time, section 499A.11 provided, "The interest of each individual member shall be evidenced by the issuance of a certificate of ownership or deed to a particular apartment or room therein." *Id.* § 499A.11.

The general assembly amended sections 499A.19 and 499A.11, striking the language from section 499A.19 regarding voting rights of members, and altering part of the language in 499A.11 to read:

> The interest of each individual member in the cooperative shall be evidenced by the issuance of a certificate of ownership or deed to a particular apartment or room therein. Such membership. The certificate of membership is coupled with a possessory interest in the real and personal property of the cooperative, entitling each member to a proprietary

> lease with the cooperative under which each member has an exclusive possessory interest in an apartment unit . . . , and which creates a legal relationship of landlord and tenant between the cooperative and member.

1991 Iowa Acts ch. 30, §§ 5, 14 (codified at Iowa Code §§ 499A.11, .19 (1993)).

The City argues that by deleting the language "[i]f one member owns more than one apartment" from section 499A.19 and adding the language "each member has an exclusive possessory interest in an apartment unit" to section 499A.11, the general assembly clearly manifested its intent to limit a member's ability to own more than one unit. However, we think these amendments lead to a different conclusion.

Before the amendments, section 499A.19 governed only the election of directors. *See* Iowa Code § 499A.19 (1991). The general assembly then expanded the scope of the section by creating a section governing all matters submitted to a vote of the members. 1991 Iowa Acts ch. 30, § 10 (now codified at Iowa Code § 499A.3C). The section as amended reads, "Each member is entitled to one vote on each matter submitted to a vote of the members. A membership interest in the cooperative jointly owned by two or more persons is nevertheless entitled to one vote." Iowa Code § 499A.3C. Before the amendments, section 499A.19 made it clear that, despite the use of these arguably restrictive terms, chapter 499A authorized individuals to own multiple units. *Id.* § 499A.19 (1991).

The language regarding joint ownership in a unit remained in the statute after the amendment, while that authorizing multiple-unit ownership did not. *See* 1991 Iowa Acts ch. 30, § 10. However, the general assembly added nothing to the Code to specifically prohibit

multiple-unit ownership, and it could have made that change at the same time it was making these amendments if it had so desired.

The City argues interpreting the statute in this manner leads to absurd results because an owner's financial share would be underrepresented in his or her vote. However, it is recognized that membership voting in cooperatives may have a disproportional distribution of ownership to influence. *See* U.S. Small Business Administration, *Choose Your Business Structure: Cooperative*, *available at* www.sba.gov/content/cooperative (last visited Apr. 28, 2015) ("While the 'one member-one vote' philosophy is appealing to small investors, larger investors may choose to invest their money elsewhere because a larger share investment in the cooperative does not translate to greater decision-making power."). In addition, at any given time, units may be unoccupied. Thus, the cooperative would not issue membership certificates for those units and the ownership of those units would remain in the cooperative corporation, rather than an individual member, until the cooperative issued the certificates pursuant to section 499A.11.

Before the 1991 amendments, section 499A.11 used the terms "individual" and "a particular apartment" in describing the interests of a cooperative's members. Iowa Code § 499A.11 (1991). The general assembly then amended this section, and in so doing continued to use the term "individual" in section 499A.11 and substituted "an apartment unit" for what had previously read "a particular apartment." 1991 Iowa Acts ch. 30, § 5. This use of these similar terms suggests the general assembly did not intend to alter the meaning of the provision governing issuance of membership certificates, and the absence of any restrictions

requiring a different member for each apartment unit are more telling than the change to these five words.

Finally, we note that the position taken by the City, in essence, would require that we revive the "actual use" test we explicitly rejected in *Krupp.* *See* 801 N.W.2d at 16 ("By enacting the amendment with an organizational test, the legislature avoided a fact intensive 'actual use' test . . . ."). The organizational process necessarily takes place before the cooperative issues membership certificates and before the cooperative identifies all of its members. *See* Iowa Code § 499A.2A(1). Looking beyond what is required to properly organize the cooperative to how the membership certificates are held meanders into the actual use of the property—how many apartments each member holds relates to the use of the property. This inquiry is not permitted under our decision in *Krupp*, 801 N.W.2d at 16.

Accordingly, the district court was correct in finding as a matter of law the Board did not err in holding the Code does not require a one-apartment-unit-per-member ownership ratio for a multiple housing cooperative to be properly organized.

**VII. Disposition.**

The Board and the district court were correct in finding as a matter of law the organizers properly organized the eleven multiple housing cooperatives under Iowa law. Therefore, we affirm the judgment of the district court affirming the decision of the Board classifying the property held by the cooperatives as residential for purposes of property taxes.

**AFFIRMED.**

All justices concur except Mansfield, J., who concurs specially.

#14–0495, *City of Iowa City v. Iowa City Bd. of Review*

**MANSFIELD, Justice (concurring specially).**

I concur in result only. As I explain in my special concurrence today in *Dolphin Residential Cooperative, Inc. v. Iowa City Board of Review*, 863 N.W.2d 644 (Iowa 2015), I believe *Krupp Place 1 Co-op, Inc. v. Board of Review*, 801 N.W.2d 9 (Iowa 2011), was wrongly decided and should be overruled. In my view, Iowa law does not extend residential property tax benefits to a commercial landlord simply because the landlord has performed a paper reorganization into a cooperative. When the new entity lacks members that are independent from each other and remains in reality the same unitary commercial enterprise as before, the economic substance test has not been met and the entity should not be recognized as a cooperative for property tax purposes.

In this case, our record is limited, and the arguments raised are equally limited. The record does show that all of the properties were previously commercial rental properties in Iowa City and were taxed as such. In late December 2011, following the *Krupp* decision, cooperatives were formed that apparently took over ownership of these properties. Each cooperative had two "incorporators"[3]—either PP One, Inc. and PP Two, Inc., or Myrtle Grove, Inc. and Myrtle Grove 2, Inc. Michael Oliveira was the president/secretary of both PP entities, and Michael Hodge was the president/secretary of both Myrtle Grove entities. Also, Mr. Oliveira was named the initial director of the entities with PP organizers, and Mr. Hodge was the initial director of the entities with Myrtle Grove organizers. In May 2012, the Iowa City Board of Review reclassified all the properties from commercial to residential.

---

[3]The articles of incorporation use the term "incorporators," but I assume "organizers" is meant. *See* Iowa Code § 499A.1(1) (2011).

That's all we know. For example, we do not know who the present members of the purported cooperatives are. Are they the same as the organizers? Are Mr. Oliveira and Mr. Hodge still calling the shots? The record does not provide answers to these questions. While I suspect these cooperatives are as ephemeral as the purported cooperative in *Dolphin*, the present record is too sparse to allow me to reach that conclusion.

Also, the arguments raised by the City are rather narrow. The City argues only (1) corporations cannot be organizers and (2) Iowa Code section 499A.11 requires that each member have an interest in only one apartment. I generally agree with the majority's resolution of these points.

Accordingly, I concur in the judgment in this case.