# IN THE COURT OF APPEALS OF IOWA

No. 14-1384
Filed September 10, 2015

RICHARD and MELISSA ADAMS and
HEARTLAND INSURANCE RISK POOL,
    Petitioners-Appellants,

vs.

IOWA DEPARTMENT OF HUMAN SERVICES,
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Mahaska County, Daniel P. Wilson, Judge.

The Appellants appeal from an adverse ruling on judicial review of an Iowa Department of Human Services decision denying their claim seeking reimbursement of certain legal costs from the Foster Home Insurance Fund. **REVERSED AND REMANDED WITH DIRECTIONS.**

Carlton G. Salmons of Gaudineer & George, L.L.P., West Des Moines, for appellants.

Thomas J. Miller, Attorney General, and Charles K. Phillips, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**DOYLE, J.**

This case concerns construction of the now defunct and never before construed statutory provisions of Iowa Code section 237.13 subsections (1)(b) and (5),[1] which provided that the Foster Home Insurance Fund (Fund) reimburse certain guardians for legal costs incurred in defending suits filed by a ward or the ward's representative. In 2009, the Adamses[2] submitted a claim to the Fund seeking, among other things, reimbursement for legal costs they incurred defending a suit filed by their former ward. The Adamses appeal from an adverse ruling on judicial review of an Iowa Department of Human Services (DHS) decision denying their claim. We conclude the Adamses are eligible for reimbursement from the Fund for the reasonable and necessary legal costs they incurred in defending against the suit filed by their former ward. Consequently, we remand the case to the district court to enter an order reversing and remanding to DHS for further determinations consistent with this opinion.

### I. Background Facts.

Mahaska County Deputy Sheriff Richard Adams, and his wife Melissa, became friends of Yvonne Evans, who was known to Richard through his work. Yvonne's husband, Robin, frequently worked out of town, leaving Robin's teenage daughter, Ashley, in Yvonne's care. Yvonne and Ashley's relationship began to deteriorate in the summer of 2007. Yvonne confided in and sought advice from the Adamses, as they had raised teenage children themselves. After

---

[1] All references herein are to the 2009 edition of the Iowa Code, unless otherwise indicated.

[2] When referring to the Petitioners-Appellants collectively, we refer to them as the Adamses.

Ashley snuck out of the house one night, Yvonne called the Adamses and asked them to come over so she could talk about it. The Adamses then drove to the Evanses' house. After the conversation, Yvonne permitted Ashley to go and stay at the Adamses' house for a couple of days so Yvonne could sleep and "cool off." As planned, after two days Ashley returned home to resume living with Yvonne. The next weekend, November 25, 2007, Yvonne and Ashley were fighting again. Ashley called 9-1-1 and asked for someone to come and remove her from the home. Yvonne called the Adamses and asked them to take Ashley back into their home for a couple of days. The Adamses picked Ashley up and took the fifteen-year-old to their home.[3]

Melissa engaged in conversations with Ashley to elicit the underlying bases for Ashley's troubles with her stepmother, Yvonne. Ashley revealed abuse by her stepmother and a strained relationship with her father. Ashley wanted to live with the Adamses and have them become her guardians. A petition for appointment of voluntary guardian pursuant to Iowa Code section 633.557(1) was filed by Ashley on November 28, 2007. On November 30, the district court appointed Richard and Melissa as Ashley's co-guardians. Letters of appointment were filed the same day. Ashley continued to live with the Adamses.

In February 2008, Ashley's father filed a motion to set aside the guardianship because he did not receive notice of the guardianship

---

[3] A more detailed rendition of these facts may be found in our opinion *Evans v. Adams*, No. 11-0176, 2012 WL 1058199, at *1-2 (Iowa Ct. App. Mar. 28, 2012).

proceedings.[4] On April 29, 2008, the probate court set aside the guardianship, ruling that "the order appointing guardian in this case should be and the same is hereby declared void and of no effect." The court further ruled,

> the petition for guardianship shall remain on file conditioned upon appropriate service upon [Ashley's] father, . . . and upon such service shall be scheduled for a trial setting conference. In the event the petition is not served within thirty days of the date of the filing of this ruling, the petition shall be deemed dismissed.

Apparently the petition was not served on Ashley's father, and on June 12, 2008, the district court ordered "the petition . . . should be and is hereby dismissed." These rulings were not appealed. Ashley returned home to live with her father and stepmother in May 2008.

On November 3, 2008, Ashley's father, individually and as next friend of Ashley, sued the Adamses, asserting they were liable for money damages pursuant to 42 U.S.C. § 1983, child stealing, false imprisonment, abuse of process, and harboring a runaway child (Lawsuit). The Heartland Insurance Risk Pool (Heartland) funded the Adamses' defense of the Lawsuit. The Adamses prevailed in their defense in the Lawsuit as summary judgment was granted in their favor and affirmed on appeal by this court. *See Evans*, 2012 WL 1058199, at *9.

### II. *Course of Proceedings*.

During litigation of the Lawsuit, the Adamses filed a claim with the Fund under Iowa Code section 237.13 seeking reimbursement of certain costs, including the legal expenses they incurred in defending the Lawsuit. The claim

---

[4] If the proposed ward is a minor, notice of the petition for appointment of a guardian "shall also be served upon" the parents of the proposed ward. Iowa Code § 633.554(2)(b)(1).

was denied by EMC Insurance Company, with whom the State contracts to run the Fund. The Adamses then filed a contested case with DHS. The petition was transferred to the Iowa Department of Inspections and Appeals and assigned to an administrative law judge (ALJ). The matter was stayed pending the outcome of the Lawsuit.

After our opinion was filed in the Lawsuit's appeal, the ALJ issued her ruling denying the Adamses' claim. The ALJ reasoned:

> Section 237.13(1)(b) defines a foster home to include private guardianships and conservatorships including a guardian established on the voluntary petition of a ward pursuant to Iowa Code section 633.557. [The Adamses] claim "foster home" status under this provision.
>
> I find that [the Adamses] do not meet the definition of a foster home entitled to make a claim against the Fund. [The Adamses] were originally established as guardians pursuant to a voluntary petition filed by Ashley. However, as noted above, [the probate court] ruled that the order appointing [the Adamses] as Ashley's guardians was "void and of no effect" because Ashley's father was not provided with notice of the proceedings establishing the guardianship.
>
> . . . .
>
> Here, the original order establishing [the Adamses] as Ashley's guardians was entered without Ashley's father having been provided notice. The district court thus rightly held the order was null and void. As such, the guardianship was void from its inception, a complete nullity and without legal effect. Under these circumstances, [the Adamses] cannot be considered to have ever been "[guardians] appointed on a voluntary petition of a ward pursuant to section 633.557" as required by terms of the statute governing the [Fund].
>
> . . . .
>
> Because [the Adamses] do not meet the statutory definition of a foster home they cannot recover against the [Fund] under any circumstances and [DHS's] motion to dismiss should be granted.

(Internal footnote omitted.) Furthermore, even if the guardianship was considered to be "voidable" rather than "void," the ALJ concluded, with regard to the Adamses' claim for legal expenses incurred in defending the Lawsuit, those

expenses "were incurred by [Heartland] and not by [the Adamses]. [Heartland] is the entity seeking reimbursement of those costs, not [the Adamses]. [Heartland] does not meet either of the definitions of a foster home set out in section 237.13(1)." The ALJ found Heartland's claim was not recognizable under the statute and granted DHS's motion to dismiss.

The Adamses appealed to the director of DHS. The director adopted the ALJ's decision as the final decision of the agency. In his final decision, the director further clarified the agency's position, stating:

> Based on a review of the appeal record, the [Adamses] do not meet the definition of a foster home entitled to make a claim against the Fund. The [Adamses] have submitted a claim based upon a privately obtained guardianship of a child, not a foster placement of a ward. Iowa Code [section] 237.13(3) grants reimbursement to "licensed foster homes" providing "foster care" to "foster children" who incur damages arising from the "foster relationship" and the provision of "foster services." The [Adamses] were not foster parents, licensed or otherwise.
> . . . .
> As the [Adamses] do not meet the statutory definition of a foster home, they cannot recover funds from the [Fund] under any circumstances. Therefore, [DHS's] motion to dismiss was granted correctly.

The Adamses then filed a petition for judicial review in the district court. Among other grounds, the Adamses argued:

> The final decision . . . was in violation of [section] 17A.19(10) [paragraphs] (i), (*l*), (m), and (n) as irrational, illogical and an unjustified interpretation of [s]ections 237.13(1)(b) and 237.13(5), and in applying admitted facts to those statutes, by foreclosing reimbursement to [Heartland], as subrogated to the rights of [the Adamses], in having paid the defense costs in the [Lawsuit] when the ALJ's and Director's Decisions wholly rejected consideration of fundamental subrogation principles.

After a hearing was held, the district court issued its ruling dismissing the Adamses' petition. The court did not address the agency's factual finding that

the Adamses did not meet the statutory definition of a foster home. Rather, in construing applicable statutory provisions, the court concluded:

> The [Adamses] have never alleged their claims arose out of a *foster care relationship*. [The Adamses] have only claimed that expenses arising out of their *guardianship* were eligible for reimbursement by the Fund. It is true that some claims from a guardianship could have been reimbursed. But they had to have been an outgrowth of a foster care relationship. No such relationship existed in this case. It began and ended as a guardianship.
> Substantial evidence supports the Director of DHS's conclusion that the [Adamses'] expenses did not arise out of a foster care relationship.
> Because [the Adamses'] claims did not arise out of a foster care relationship, they are ineligible for reimbursement by the Fund.

(Emphasis in original.) The district court dismissed the petition.

The Adamses filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2) requesting the district court to amend and enlarge its findings and conclusions on a number of grounds. The court granted in part and denied in part the motion. Relevant to this appeal, the court stated:

> The [Adamses] urge the court to give consideration to the alternative definition of "foster home." The court has done so. In the ruling, the court acknowledges that some guardianship arrangements (meaning "foster homes" under the 237.13 definition) arise out of the foster care relationship, but some do not. This construction does not render section 237.13(5) "totally useless." The court acknowledges that a subset of guardianships and conservatorships are eligible for reimbursement. The [Adamses] do not belong to this subset (because their expenses do not arise out of a foster care relationship). The court's reading ensures that section 237.13(4)(b) is not rendered "totally useless" by allowing claims against the Fund regardless of their genesis. The court will not alter the ruling on this matter.
> . . . .
> The [Adamses] insist the court must make new findings and conclusions that the [Adamses] are covered by the Fund. Because the court found [the Adamses] are not covered by the Fund under Iowa Code section 237.13 for the reasons stated in the ruling, the court declines to alter its findings and conclusions in that regard.

The Adamses now appeal.

### III.  *Scope and Standards of Review.*

Iowa Code section 17A.19(10) governs judicial review of an agency ruling.  The district court reviews the agency's decision in an appellate capacity.  In turn, we review the district court's decision to determine whether it correctly applied the law.  We must apply the standards set forth in section 17A.19(10) and determine whether our application of those standards produces the same result as reached by the district court.  The burden of demonstrating the invalidity of agency action is on the party asserting invalidity.

*Hawkeye Land Co. v. Iowa Utils. Bd.*, 847 N.W.2d 199, 207 (Iowa 2014) (internal

citations, quotation marks, and alterations omitted).

The agency action at issue here is DHS's interpretation of Iowa Code

section 237.13.  Specifically, DHS interpreted the section so as to limit the Fund's

reimbursement liability to claims made by "licensed foster homes" providing

"foster care" to "foster children."

The deference we give to the [agency's] decision depends upon the legislative grant of authority to the agency.  If the legislature clearly vested the agency with the authority to interpret the statute at issue, we reverse the [agency's] decision only when its interpretation is irrational, illogical, or wholly unjustifiable.  However, if the legislature did *not* clearly vest the agency with such authority, we reverse the agency decision if it relies on an erroneous interpretation of the law.

To determine the breadth of the agency's vested authority, we carefully consider the specific language the agency has interpreted as well as the specific duties and authority given to the agency with respect to enforcing particular statutes.  We recognize that even though the legislature may explicitly vest the authority to interpret an entire statutory scheme with an agency, the fact that an agency has been granted rule making authority does not give an agency the authority to interpret *all* statutory language.  Broad articulations of an agency's authority, or lack of authority, should be avoided in the absence of an express grant of broad interpretive authority.  The agency's own belief that the legislature vested it with interpretive authority is irrelevant.

*Gartner v. Iowa Dep't of Pub. Health*, 830 N.W.2d 335, 343 (Iowa 2013) (internal citations, quotation marks, and alterations omitted).

We see no clear indication the legislature intended to vest DHS with interpretive authority over section 237.13. Furthermore, DHS agrees with the Adamses that the appropriate standard of review is for correction of errors at law. By so agreeing, DHS concedes the legislature did not instill in the agency the authority to interpret the Fund statute. *See id.* at 344. Thus, we accord no deference to DHS's interpretation of the statute. Therefore, we will reverse the agency's decision if it is based on "an erroneous interpretation" of the law. *See* Iowa Code § 17A.19(10)(c).

### IV. Statutory History.

The Fund was created by the legislature in 1988. *See* 1988 Iowa Acts ch. 1223, § 1 (codified at Iowa Code § 237.13 (1989)). Pertinent to this appeal, the law provided that for purposes of section 237.13, "'foster home' means," among other things, a "guardian appointed on a voluntary petition of a ward pursuant to section 633.557." Iowa Code § 237.13(1)(b) (1989).[5] The law further stated:

> Except as provided in this section, the fund shall pay, on behalf of a guardian . . . , the reasonable and necessary legal costs incurred in defending against a suit filed by a ward or the ward's representative and the damages awarded as a result of the suit, so long as it is determined that the guardian . . . acted in good faith in the performance of [the guardian's] duties. A payment shall not be made if there is evidence of intentional misconduct or a knowing violation of the law by the guardian . . . , including, but not limited to, failure to carry out the responsibilities required under sections 633.633 through 633.635 and 633.641 through 633.651.

---

[5] Iowa Code section 237.13 subsections (1)(b) and (5) were amended in 2001 in ways not pertinent to this appeal. *See* 2001 Iowa Acts ch. 135, § 1.

*Id.* § 237.13(5).[6]  DHS thereafter adopted rules concerning payments from the Fund.  *See id.* § 237.13(9).  Concerning eligible guardian claims, the adopted rules provided in pertinent part:

> The [Fund] shall pay the reasonable and necessary legal costs incurred by a guardian . . . in defending against a suit filed by an eligible ward or the ward's representative and the damages awarded as a result of the suit within the limits defined in Iowa Code section 237.13, subsection 5.  The reasonableness and necessity of legal fees shall be determined by [DHS] or its contract agent.

Iowa Admin. Code r. 441-158.1(2) (effective July 1, 1988).

On November 23, 2009, the Adamses filed their notice of claim with the Fund.  The legislature responded by striking subsections 237.13(1)(b) and (5) from the law.  *See* 2011 Iowa Acts ch. 98, §§ 2, 3.

## V.  *Discussion.*

DHS's final decision that the Adamses could not recover from the Fund "under any circumstances" was founded upon its conclusion the Adamses did not meet the statutory definition of foster home.  In its ruling, the district court applied section 237.13(4)(b), which provides the Fund is not liable for "[a]n occurrence which does not arise from the foster care relationship."  The court concluded the Adamses were ineligible for reimbursement by the Fund because the Adamses' claims did not arise out of a foster care relationship.  Did the district court err in construing section 237.13 to deny the Adamses reimbursement from the Fund?  We think it did.

---

[6] Section 237.13(5) was non-substantively amended in 1989.  *See* 1989 Iowa Acts ch. 178, § 4.

We begin our analysis by reviewing the operative statutory language in light of our canons of construction. "Our starting point is the statutory text." *In re A.M.*, 856 N.W.2d 365, 371 (Iowa 2014).

> When confronted with the task of statutory construction, we try to determine legislative intent from the words used by the general assembly, not from what the general assembly should or might have said. We may not extend, enlarge or otherwise change the meaning of a statute under the guise of construction. When construing a statute, we are required to assess a statute in its entirety, not just isolated words or phrases. When construing a statute, we avoid a construction that makes part of a statute redundant or irrelevant. We try to give a statute a reasonable construction that best achieves the statute's purpose and avoids absurd results.

*City of Iowa City v. Iowa City Bd. of Review*, 863 N.W.2d 663, 666 (Iowa 2015) (internal citations and quotation marks omitted). "[I]t is the prerogative of the legislature to define its statutory language. When this is done, the definition used by the legislature is binding on us. We will not undermine a policy decision by our legislature by ignoring the plain language of the statute." *State v. Olsen*, 618 N.W.2d 346, 350 (Iowa 2000) (internal citations and quotation marks omitted). "We do not engage in innovations or improvements of the statute. Rather, we interpret it as we find it." *Sallee v. Stewart*, 827 N.W.2d 128, 150 (Iowa 2013).

Section 237.13(5) (2009) provides "the fund shall pay, on behalf of a guardian . . . the reasonable and necessary legal costs incurred in defending a suit filed by a ward or the ward's representative . . . so long as it is determined that the guardian . . . acted in good faith in the performance of the guardian's . . . duties." DHS does not argue the Adamses were not guardians of Ashley. There is no dispute that the Adamses defended the Lawsuit filed by Ashley's representative. Thus, it is clear that under this statutory provision, the

Fund is obligated to pay on behalf of the Adamses the reasonable and necessary legal costs they incurred in defending the Lawsuit "so long as it is determined that [they] acted in good faith in the performance of [their guardian] duties," unless "there is evidence of intentional misconduct or a knowing violation of the law by the guardians." Iowa Code § 237.13(5). DHS does not argue the Adamses did not act in good faith in the performance of their guardianship duties, nor does it argue any intentional misconduct or a knowing violation of the law by the Adamses. In any event, our affirmance of summary judgment granted in favor of the Adamses in the Lawsuit indicates they acted in good faith in the performance of their guardianship duties and that there was no evidence of any intentional misconduct or knowing violation of the law on their part. *See Evans*, 2012 WL 1058199, at *8-9. Not finding any applicable exceptions under section 237.13(5), we next look for any other applicable statutory provisions that might relieve the Fund from reimbursement responsibility.

So, we move on to section 237.13(4)(b), which provides that "the fund is not liable for . . . [a]n occurrence which does not arise from the foster care relationship." Two conditions must be met before the provision becomes applicable. *See* Iowa Code § 237.13(4)(b). First, there must be an "occurrence." *See id.* Second, the occurrence must not arise from the "foster care relationship." *See id.* If either, or both, conditions are not satisfied, the provision does not come into play. *See id.* In applying this provision to relieve the Fund of any liability, the district court focused on the provision's words "foster care relationship," so we will examine that condition first.

There is no dispute that the Adamses were appointed guardians of Ashley under section 633.557. Section 237.13(1)(b) specifically provides that, for purposes of the Fund, "'foster home' means . . . a guardian appointed on . . . a voluntary petition of a ward pursuant to section 633.557." Therefore, for purposes of Fund liability, the Adamses were a "foster home." *See* Iowa Code § 237.13(1)(b). Being a statutorily recognized foster home necessarily ordains a foster care relationship, at least for purposes of the Fund statute. We must therefore conclude the Adamses' claim arises out of a foster care relationship. Consequently, the "does not arise from the foster care relationship" condition is not met and therefore section 237.13(4)(b) does not come into play. The district court and the agency erroneously concluded otherwise. We could stop here, but we next look to see if the other statutory condition, whether there was an "occurrence," has been met.

"The fund is not liable for . . . [a]n occurrence which does not arise from the foster care relationship." *Id.* "Occurrence" is "[s]omething that happens or takes place; [specifically], an accident, event, or continuing condition that results in personal injury or property damage that is neither expected nor intended from the standpoint of an insured party." Black's Law Dictionary 1248 (10th ed. 2014). In construing the meaning of the word "occurrence" in this statutory provision, we also look to the other liability exceptions it is grouped with, for it is a familiar canon of statutory construction that "words grouped in a list should be given related meaning." *Third Nat'l Bank in Nashville v. Impac Ltd., Inc.*, 432 U.S. 312, 322 (1977). The other listed liability exceptions concern tortious acts, criminal

acts, or prohibited conduct. *See* Iowa Code § 237.13(4)(a)-(d), (g).[7] Our conclusion that the word "occurrence" in the statute means a happening, event, or incident is consistent with all of the other exceptions listed under section 237.13(4) for which the Fund is not liable. Here, the Adamses' claim for legal costs is founded in their defense of the Lawsuit. A "suit" or "lawsuit" is "[a]ny proceeding by a party or parties against another in a court of law." Black's Law Dictionary 1663 (10th ed. 2014). A lawsuit is a proceeding; it is not a happening, event, or incident. A lawsuit cannot therefore be construed as an "occurrence" under the statutory exception. With the "occurrence" not being met, section 237.13(4)(b) does not come into play, even if we were to conclude there was no foster care relationship. Therefore, section 237.13(4)(b) is simply not applicable to defeat the Adamses' claim for legal costs incurred in defending the Lawsuit.

Finally, we note that the statutory history supports our construction of the statutory provisions. The Adamses made their claim against the Fund in November 2009. The legislature's response was relatively quick, and its reaction supports our construction of the statute. On March 8, 2011, Senate File 482 was introduced in the Senate. *See* S. Journal, 84th G.A., Reg. Sess. at 551 (Iowa 2011) (introducing S.F. 482). The bill provided, among other things, for the striking of section 237.13 subsections (1)(b) and (5).[8] *See* S.F. 482, 84th G.A., Reg. Sess. § 2 (Iowa 2011). The bill was enacted in April 2011. *See* 2011 Iowa

---

[7] Paragraphs (e) and (f) concern losses or damages arising out of occurrences prior to July 1, 1988, and exemplary or punitive damages. *See* Iowa Code § 237.13(4)(e), (f).

[8] Subsection (1)(b) defined a guardian appointed under section 633.557 as a "foster home." Subsection (5) provided the Fund shall pay on behalf of a guardian the reasonable and necessary legal costs incurred in defending against a suit filed by the ward or the ward's representative.

Acts ch. 98, §§ 2, 3. If subsections (1)(b) and (5) could not reasonably be construed to afford the Adamses' eligibility for reimbursement from the Fund for the legal costs they incurred in defending against the Lawsuit, why would the legislature find it necessary to strike the provisions? Words matter. The legislature obviously thought so, or it would not have amended the statute. *See, e.g.*, Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 256 (2012) ("[A] change in the language of a prior statute presumably connotes a change in meaning.").

Here, the Adamses were appointed Ashley's guardians following Ashley's filing of a voluntary petition pursuant to Iowa Code section 633.557. Under the statutory definition of "foster home" provided in section 237.13(1)(b), the Adamses were a "foster home" for purposes of Fund liability. Consequently, the agency and the district court's interpretation of section 237.13(1)(b) to the contrary was erroneous.

Furthermore, there was no evidence that the Adamses failed to act in good faith in the performance of their guardianship duties or that they engaged in any intentional misconduct or knowing violation of the law, such that section 237.13(5) would apply to preclude the Adamses from recovering their reasonable and necessary legal costs incurred in the Lawsuit. Likewise, section 237.13(4)(b) does not apply under the facts of this case to bar the Adamses from recovering their reasonable and necessary legal costs incurred in the Lawsuit. Thus, the district court and the agency, to the extent the agency found otherwise, erred in their determination that either subsections 237.13(4)(b) or (5) applied to exclude the Adamses from reimbursement from the Fund.

*VI. Conclusion.*

In summary, we conclude the district court and the agency erred in finding the Adamses are ineligible for reimbursement from the Fund for the reasonable and necessary legal costs they incurred in defending against the Lawsuit. Having so decided, we need not consider the Adamses' other arguments urging reversal. We therefore reverse the district court's judicial-review ruling and remand the case to the district court to enter an order reversing and remanding to DHS for further determinations consistent with this opinion.

**REVERSED AND REMANDED WITH DIRECTIONS.**