# IN THE COURT OF APPEALS OF IOWA

No. 20-0428
Filed August 19, 2020

**IN THE INTEREST OF M.S. and E.S.,**
**Minor Children,**

**B.G., Mother,**
    Appellant,

**D.L. and S.L., Grandparents,**
    Appellees.
_____

Appeal from the Iowa District Court for Harrison County, Jennifer A. Benson, District Associate Judge.

A mother appeals termination of her parental rights to the children in this private termination proceeding. **AFFIRMED**.

Donna K. Bothwell of Bothwell Law Office, Logan, for appellant.

Ashley N. West of Mumm Law Firm, Missouri Valley, for appellees.

Justin R. Wyatt of Woods & Wyatt, PLLC, Glenwood, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and May and Ahlers, JJ.

**AHLERS, Judge.**

The parents of these young children, ages three and four at the time of the termination hearing, delegated their parenting responsibilities to the children's paternal grandparents for the majority of the children's lives. The grandparents eventually filed petitions seeking to terminate the parental rights of the parents pursuant to Iowa Code chapter 600A (2019). The juvenile court terminated the rights of both parents. In doing so, the juvenile court determined the mother abandoned the child within the context of Iowa Code section 600A.8(3)(b). The mother appeals, challenging the juvenile court's findings that the statutory ground of abandonment was established and termination of the mother's rights was in the best interest of the children.[1]

## I.      Standard of Review.

We review termination proceedings under chapter 600A de novo. *See In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998). As in all termination proceedings, our primary concern is the children's best interest. *See* Iowa Code § 600A.1(2); *R.K.B.*, 572 N.W.2d at 601. Though the juvenile court's fact findings are not binding, we give them weight. *See R.K.B.*, 572 N.W.2d at 601. This is especially true with regard to credibility findings. *See id.*

## II.     Background Facts and Proceedings.

We start our discussion by noting the juvenile court issued a thorough and detailed ruling setting forth factual findings and legal conclusions. Following our

---

[1] The father consented to the termination of his rights. He did not appeal.

de novo review, we are in substantial agreement with all significant factual findings made by the juvenile court. We will highlight some of those significant facts.

M.S. was born in 2015, and E.S. was born in 2016. Starting in April 2017, both parents and both children moved into the home of the children's paternal grandparents. Later in 2017, the father moved out, but the mother remained. During the time both parents and then just the mother resided with the grandparents, responsibilities for the children were delegated to the grandparents. The mother moved out in February 2019, leaving the children behind with the grandparents. Although no formal guardianship was established, the mother signed papers acknowledging the mother's agreement for the children to remain in the grandparents' care. At the time the mother left the grandparents' home, the mother's stated plan was to get an apartment, pursue an education, and establish a foundation to provide a stable home for the children.

The mother's plan did not materialize. While the mother maintained employment and moved into a room at a motel, the mother acknowledged it was not a suitable place to house the children. In spite of the fact the motel was two and one-half blocks away from the residence where the children resided and the mother was told she could visit whenever she wanted, the mother maintained minimal contact with the children. When efforts were made by the grandparents to encourage visits, the mother frequently blamed her work schedule or being tired from work as excuses to not exercise visitation. On the infrequent occasions when the mother reached out to the grandparents, it was often to ask for money or other assistance, rather than to arrange time to see the children or even talk to them.

The mother also made no financial contributions for the care of the children, either in money or in kind.

In September 2019, the grandparents filed the petitions initiating these termination proceedings.[2]  Even after the petitions were filed, there was no significant increase in the mother's efforts to fulfill her parenting responsibilities or to maintain contact with the children.  After a contested termination hearing held in December 2019, the mother's rights to both children were terminated based on a finding of abandonment.

## III.    Discussion.

As previously noted, the mother challenges both the finding that the statutory ground of abandonment was met and the finding that it was in the best interest of the children to terminate the mother's rights.  We address each of those challenges.

### A.    Statutory Grounds.

Iowa Code section 600A.8(3)(b) sets forth the following ground for termination:

---

[2] In their petitions, the grandparents alleged they were the guardians of the children.  "Guardian" is defined by Iowa Code section 600A.2(10), in relevant part, as "a person who is not the parent of a minor child" and "who has been appointed by a court or juvenile court" to make important decisions for the child.  As previously noted, formal guardianship proceedings did not take place.  Therefore, it does not appear the grandparents meet the definition of "guardian" under chapter 600A.  They do, however, appear to meet the definition of "custodian" set forth in section 600A.2(8), as they are relatives within the fourth degree of consanguinity to the children and had "assumed responsibility for" the children.  As custodians, the grandparents would have been persons statutorily authorized to file petitions in this matter.  *See* Iowa Code § 600A.5(1) (listing a "parent or prospective parent" or "custodian or guardian of the child" as persons authorized to file a termination petition).  Regardless, the mother does not challenge the grandparents' authority to file the petitions under chapter 600A.

> If the child is six months of age or older when the termination hearing is held, a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:
>
> > (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> >
> > (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> >
> > (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

The phrase "to abandon a minor child" means a parent "rejects the duties imposed by the parent-child relationship . . . which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide for the support of the child or to communicate with the child." Iowa Code § 600A.2(20).

The juvenile court determined the grandparents established this ground by clear and convincing evidence. In challenging this determination, the mother asserts: (1) the mother was of limited means, was never ordered to provide support, and offered to provide diapers and clothes; (2) the grandparents interfered with her efforts to maintain contact with the children; and (3) she openly lived with the children during a six-month period during the one-year period prior to the filing of the termination petitions. We find none of the mother's challenges persuasive.

**(1)     Lack of Financial Support.**

With respect to the mother's lack of financial support, the juvenile court made the following findings:

> Iowa Code [s]ection 600A.8(3)(b) requires [the mother] to contribute a *reasonable amount* toward [the children's] support *in accordance with her means.* Although [the mother] earned a relatively meager amount at [the fast food restaurant at which she worked], she has failed to contribute *any* financial support to her children. Because [the mother] was employed, the Court finds that she could have contributed something, however minimal, in the way of economic support for her children. No evidence was presented to indicate that [the mother] was absolutely unable to contribute to their support.
>
> The Court recognizes that a child support order was not established in this case and that the [grandparents] did not request any financial assistance from [the mother]. However, [the mother] did not even make a marginal effort to provide anything for her children. She did not purchase any food, clothing, or other necessary supplies for her children, despite having a steady, though meager, income. No evidence was presented that she gave her children gifts of any kind. Here, [the mother's] overall lack of concern about her children, not her level of resources, is the fundamental problem. Because [the mother] has failed to contribute in any way to the support of her children, the Court finds that the threshold element for termination has been met.

On our de novo review, we agree with these findings. In addition, we note the lack of a child support order did not relieve the mother of her obligation to support the children. *See In re W.W.*, 826 N.W.2d 706, 710 (Iowa Ct. App. 2012) (finding the financial support referenced in section 600A.8(3)(b) is not limited to court-ordered support payments, as court-ordered payments are the subject of a separate ground for termination under section 600A.8(4)). Likewise, her isolated offer to provide diapers and clothing did not constitute financial support of a "reasonable amount," as required by section 600A.8(3)(b).

### (2)    Lack of Contact & Claimed Interference.

While the failure to provide financial support by itself satisfies the ground of abandonment set forth in section 600A.8(3)(b), we will also address the lack of contact provisions set forth in section 600A.8(3)(b)(1) through (3).

We will start with a discussion of section 600A.8(3)(b)(1) and (2). On our de novo review, the record establishes that the mother did not satisfy any of the contact provisions set forth in those provisions. In spite of the fact she only lived two and one-half blocks from the children and the mother usually got off work by late afternoon, the mother only visited the children a handful of times during the ten-month period between when she moved out of the grandparents' home in February 2019 and the termination hearing in December 2019. On the rare occasions she made other contact with the grandparents, it was generally to ask for food or money for herself rather than to catch up on the children's lives. These facts show lack of fulfillment of the contact requirements set forth in section 600A.8(3)(b)(1) and (2).

Contrary to the mother's assertions, the grandparents did not prevent the mother's contact with the children. The record shows the grandparents did nothing unreasonable to limit the mother's access to the children. In fact, they openly encouraged the mother to visit the children. The grandparents' refusal to awaken the children when the mother stopped in unannounced after the children's known bedtime was reasonable. Likewise, the grandparents' request to set some type of schedule for the mother's time with the children was not unreasonable, as the request was made after repeated failures of the mother to follow through with informally planned time with the children.

The mother's reliance on a claimed threat to contact the police if the mother came on the grandparents' property is not persuasive due to the temporary and isolated nature of the claimed threat. A text message was sent from one of the grandparents to the mother in early October 2019 indicating the police would be

called if the mother came on the grandparents' property. This event would cause concern if it was not put in context. The context of this event is that there was a heated exchange between the grandparents and the mother in early October 2019. Determining who was responsible for the heated exchange or what prompted it is largely unnecessary. At a time when both sides were worked up over the situation, the text message was sent. However, the record reveals no other hostility between the parties and no restrictions placed on the mother's contact after the text was sent. In fact, one of the mother's rare visits occurred on Halloween, after the text message at issue had been sent. When put in perspective, this one-time text message does not excuse the mother's ongoing lack of contact with the children.

### (3) Time Spent Living With the Children.

The mother's final argument regarding the statutory ground of abandonment is that, since the mother lived with the children from April 2017 through February 2019, she satisfied the requirements of section 600A.8(3)(b)(3), that she "[o]penly liv[ed] with the child[ren] for a period of six months within the one-year period immediately preceding the termination of parental rights hearing." This argument fails for two reasons. First, by the plain language of the statute, the applicable period is the one-year period preceding the termination of parental rights hearing, not the filing of the termination petition, as asserted by the mother. Due to the termination hearing being held in December 2019, the one-year period at issue was from December 2018 to December 2019. There is no dispute the mother only lived with the children during two months of that one-year period. Second, even if we measured from the date of filing the petition, as suggested by the mother in spite of the plain language of the statute, the mother still does not

satisfy this requirement. The petitions were filed in mid-September 2019, so the twelve-month period suggested by the mother would be from mid-September 2018 through mid-September 2019. Within that time period, it is uncontroverted the mother only openly lived with the children from September 2018 to February 2019, a period of five months, not the six months required by section 600A.8(3)(b)(3).

## B.     Best Interest of the Children.

Having determined the grandparents met their burden of establishing abandonment, we turn to the mother's claim that termination is not in the children's best interest. *See In re A.H.B.*, 791 N.W.2d 687, 690 (Iowa 2010) ("Once the court has found a statutory ground for termination under a chapter 600A termination, the court must further determine whether the termination is in the best interest of the child[ren].").  The primary theme of the mother's argument is the children were only out of her care for seven months when the termination petitions were filed and such a short period of time would be of insufficient length to support termination proceedings under Iowa Code chapter 232 following child-in-need-of-assistance (CINA) proceedings. *See* Iowa Code § 232.116(1)(f)(3) (requiring children to be out of the custody of a parent for twelve months to support termination of a parent's rights to a child four years of age or older). *But see id.* § 232.116(1)(b) (allowing the juvenile court to terminate the parental rights to a child who "has been abandoned or deserted"). She also argues reasonable efforts to reunify would have been required in CINA proceedings, but no such reasonable efforts were taken in this case. *See id.* § 232.102(7) (requiring reasonable efforts to safely return a child to a parent in CINA proceedings). *But see id.* § 232.102(12)(a)

(allowing the juvenile court to waive the reasonable-efforts requirement in case of abandonment).

There is certainly incongruity between the requirements for establishing grounds for termination when filed by the State under Iowa Code chapter 232 and the requirements when filed by a parent, prospective parent, custodian, or guardian under chapter 600A. However, any perceived unfairness of this incongruity would need to be remedied by legislative action, not judicial action, as the legislature has the authority and responsibility for establishing the terms of legislation, not the courts. *See City of Iowa City v. Iowa City Bd. of Review*, 863 N.W.2d 663, 666 (Iowa 2015) (explaining courts are not free to "'extend, enlarge or otherwise change the meaning of a statute' under the guise of construction." (quoting *Schadendorf v. Snap-On Tools Corp.*, 757 N.W.2d 330, 337 (Iowa 2008))). Therefore, we will not read requirements for termination found in chapter 232 into the requirements set forth in chapter 600A. Likewise, we will not do so indirectly by implicitly imposing such requirements under the guise of assessing the best-interest-of-the-children requirement.

The juvenile court acknowledged concern that this action may have been premature given the relatively short period of time between when the mother left the children's home and the filing of these proceedings. However, the juvenile court dismissed this concern due to the mother's lack of involvement with parenting even before she moved out. We agree with the juvenile court on this point. The record establishes that, during the nearly two-year period between when the mother moved into the grandparents' home and when she moved out, the mother left the bulk of the parenting responsibilities to the grandparents. This

abandonment of her parenting responsibilities became even greater after the mother moved out. Since moving out, the juvenile court accurately described the mother's lack of involvement and responsibility as follows:

[The mother] has shown some interest in her children over the past year. However, on the few occasions that she has spent time with [the children], the interactions only lasted 30 to 45 minutes, often because [the mother] was tired. During the visits, [the mother] testified that she and the children played with blocks or watched TV. [The grandmother] testified that when [the mother] is present, the children do not interact with their mother, and they do not look to her as a parent. The record demonstrates that [the mother] has not maintained a place of importance in [the children's] lives, which is especially critical given their tender ages.

This Court believes that [the mother] has used the [arrangement with the grandparents] as a safety net and has relied upon them to care for her children. The [informal] guardianship has now been in place for a year and [the mother] has made no changes to her life to indicate that she is ready to assume the responsibilities of caring for two young children. . . .

[The mother] has not taken advantage of the generosity and willingness of the [grandparents] to take on the responsibility for [the children's] care. She has not used the last year to build a relationship with her [children], provide for their support, or otherwise attempt to parent the children. She has not maintained regular contact with her children. Nor has she provided any economic support in any amount.

Abandonment under [chapter] 600A does not require total desertion. [The mother], however, has failed to engage in "affirmative parenting to the extent practical and feasible in the circumstances." [(Citation omitted.)] This Court will not allow [the mother] to use the support of [the grandparents and the arrangement with them] as justification for her lack of relationship with the children. [The mother] has failed to express significant interest in her children's welfare. She has chosen [a] lifestyle that does not involve her children, in preference to, and at the expense of, a relationship with them.

This Court agrees with the guardian ad litem's determination that termination of the [parents'] parental rights is in the best interests of [the children]. The children are in a caring home. Their grandparents have provided the children stability and offer them the permanence of adoption. Any relationship they have with [the mother] is not that of a parent and a child. This Court recognizes the severity of termination of parental rights. However, [the mother] has not made any effort to be a meaningful part of her children's lives as

a parent for at least two years, which is over half of the children's young lives.

Upon our de novo review, we agree with these findings of the juvenile court and determine the grandparents have met their burden of establishing termination of the mother's parental rights is in the children's best interest.

**AFFIRMED.**